**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| UNITED STATES OF AMERICA | ) |
|---|---|
| Plaintiff, | ) |
|  | ) No. 94 CR 0821 |
| v. | ) |
|  | ) HONORABLE DAVID H. COAR |
| RUDOLFO R. PASCUAL | ) |
|  | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before this Court is Petitioner Rudolfo R. Pascual's ("Pascual" or "Petitioner") petition for a writ of coram nobis. For the reasons discussed below, this court grants the petition.

**I.  Facts**

Rudolfo Pascual was born in September 1941 in the Philippines.  He immigrated to the United States in September 1970, and because a lawful permanent resident in 1974.  Pascual has a bachelors degree from Harry Truman College, and currently works in his brother's company in California.  Pascual lived and worked in Chicago from approximately 1978 through 2003.

On December 28, 2004, Pascual was charged in a two-count information with filing fraudulent income tax returns on behalf of himself and three co-workers. On March 17, 1995, Rudolfo R. Pascual pled guilty to two counts of filing fraudulent tax returns.  This Court, pursuant to a written plea agreement, sentenced Pascual to two years of probation, which he completed without incident.

-1-

During the criminal case, one of Pascual's concerns was that the criminal charges might affect his immigration status. He was fearful of being deported. Pascual's attorney, David Platek, informed him that pleading guilty to his criminal charges would not have an impact on his immigration status. Pascual agreed to plead guilty to the two charges contained in the information. In the plea agreement, Pascual admitted that he knowingly caused to be filed fraudulent tax forms for himself and his co-workers by understating the amount of tax owed and overstating the refunds due.

At the change of plea hearing, this Court questioned Pascual to determine whether he was competent to plead. Pascual claimed he had never been under the care of a doctor or hospital for a mental condition, and neither Platek nor prosecuting attorney expressed doubts as to Pascual's competence.

Pascual was sentenced on June 9, 1995. At the sentencing hearing, Platek commented that Pascual seemed to have an "inability to tell the truth...it's not a criminal intent to be dishonest, but it really is a psychological problem that I don't think is addressed...[there is] something going on inside his head that makes it exceedingly difficult for him to be forthright with the truth." Transcript, June 9, 1995, at 3-4. Platek further asked the court to make it a condition of probation that Pascual receive psychological counseling. Platek states, "I really think that Mr. Pascual is psychologically incapable of formulating the responses that this Court would normally expect to hear from an admitted felon who is now accepting responsibility...if we're not very careful, we might actually be holding something against Mr. Pascual that he is psychologically incapable of doing." *Id*. at 12. Platek states, "I have no report...I have not had

him tested. I did not realize in my dealings with him that this problem was so severe." *Id*. Pascual was sentenced to two years probation, with four months in home confinement.

On September 9, 2004, Pascual was detained by the INS at the Los Angeles airport upon returning from the Philippines. Pascual was notified that he was ineligible for admission into the United States because of his 1995 conviction of a crime involving "moral turpitude." Pascual was denied official admission but was paroled into the country pending formal removal proceedings. On March 21, 2005, Pascual was served with a Notice to Appear before an immigration judge to show why he should not be removed from the United States based on his prior criminal record. That proceeding has been continued and remains pending at the time of filing of this writ.

Pascual retained an immigration lawyer in California, Judith Foster, to handle the removal proceedings. Foster became concerned about Pascual's mental competency, and retained Marc Sadoff, a Board Certified Diplomate in Clinical Social Work and a Licensed Social Worker, to perform a psychological evaluation on Pascual.

On December 27, 2004, Sadoff conducted an eight hour evaluation of Pascual, which included two psychological tests and a private interview with Pascual's brother, Silvestre. Sadoff offered a definitive diagnosis that Pascual suffered from a severe psychological condition known as Dissociative Identity Disorder ("DID). DID is described as "a disruption in the usually integrated functions of consciousness, memory, identity, or perception of the environment." Psychological Evaluation by Sadoff, Pascual's Exhibit H, at 6 (citing the Diagnostic and Statistical Manual of the American Psychiatric Association). Specifically, Pascual hears voices and experiences hallucinations. Pascual admitted to being sexually abused as a child, and Sadoff

states that there is a correlation between a history of sexual abuse and dissociative symptoms, and recognizes that Pascual has suffered mental impairment throughout his life. Sadoff suspects that Pascual may have several other Axis I mental disorders, but has not made definitive diagnoses.

On December 5, 2005, Pascual filed a petition for writ of coram nobis with this court on the basis of ineffective assistance of counsel.

**II. Legal Standard**

The writ of coram nobis allows for the reopening of litigation after final judgment, and exhaustion or waiver of any statutory right of review, under circumstances compelling such action to achieve justice. *United States v. Morgan*, 346 U.S. 502, 511 (U.S. 1954). This extraordinary legal remedy is used to correct errors of fact or law "of the most fundamental character." *Id*. The norm of finality is the background for understanding the writ of coram nobis. *United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988). Because frequent use of such a writ would discard the benefits of finality, it has been reserved for compelling events, where "sound reasons" exist for the failure to seek appropriate relief earlier. *Id*.; *United States v. Darnell*, 716 F.2d 479 (7th Cir. 1983).

Coram nobis is not a substitute for appeal. *United States v. Darnell*, 716 F.2d 479 (7th Cir. 1983). It is presumed that the challenged proceedings were correct and a heavy burden rests on the petitioner to demonstrate otherwise. *Id*. To prevail, the petitioner must demonstrate that (1) but for the fundamental errors committed a more favorable judgment would have been rendered, (2) present adverse legal consequences flowing from the conviction sufficient to

satisfy the "case or controversy" requirement of Article III, (3) there exists "sound reasons" for the petitioner's "failure to seek appropriate earlier relief" and (4) other statutory remedies are not available. *Id*.

**III. Analysis**

Pascual petitions for a writ of coram nobis on the grounds of ineffective assistance of counsel. He claims that attorney Platek affirmatively misrepresented to him that a guilty plea to the tax fraud charges would not adversely affect his immigration status, and that Platek did not identify his incompetence to plead.

**A. Affirmative Misrepresentation**

Pascual claims that Platek falsely advised him that pleading guilty would not have adverse consequences for his immigration status. In support of this, Pascual offers the affidavit of Mila Almendras that Platek told Pascual there would be no deportation consequences to pleading guilty, and proffers that, if found to be competent, he would similarly testify. The government does not dispute the fact that Platek counseled Pascual that there were no deportation consequences to pleading guilty. The government's brief states that Platek does not remember representing Pascual and has no files on the case. In the absence of a contest on this issue, this court assumes that Platek would testify that he has no recollection. Without information from Platek, this court will rely on Almendras' affidavit as the factual basis for finding that Platek advised Pascual that there were no deportation consequences to a guilty plea. As a result, Pascual pleaded guilty to the criminal charges, and now faces deportation.

The government asserts that the legal advice related to the deportation consequences of a guilty plea does not deprive the client of the effective assistance of counsel guaranteed by the Sixth Amendment. *Strickland v. Wash* provides the standard for ineffective assistance of counsel, where petitioner, in order to prevail, must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668 (U.S. 1984). *Santos v. Kolb* applied the *Strickland* test to deportation consequences of criminal proceedings, stating that "actual knowledge of consequences which are collateral to the guilty plea is not a prerequisite to the entry of a knowing and intelligent plea. A deportation proceeding is a civil proceeding which may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding." 880 F.2d 941 (7th Cir. 1989). As such, the government argues that a failure to inform petitioner of deportation consequences does not fall below an objectively unreasonable standard, and does not comprise ineffective assistance of counsel.

The Government's argument and *Santos* are distinguishable from the case at hand. In the present case, Platek did not merely fail to inform Pascual of the deportation consequences, but affirmatively misrepresented the consequences of pleading guilty. While the Seventh Circuit addresses the failure to inform in *Santos*, it has not been faced with the question of whether an attorney's affirmative misrepresentation as to the immigration consequences of a guilty plea are objectively unreasonable under *Strickland*. While this court is not bound by the decision of other circuits, we do give substantial weight to their reasoning.

Federal courts have recently viewed affirmative misrepresentation by counsel that the accused would not be deported as constituting ineffective assistance of counsel. *Downs-Morgan v. United States*, 765 F.2d 1534 (11th Cir. 1985). The Second Circuit has ruled that,

> An affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable. The United States Court of Appeals for the Second Circuit therefore holds that such a misrepresentation meets the first prong of the Strickland test. It follows that if the defendant can also establish that there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial, then, the guilty plea is invalid. *United States v. Couto*, 311 F.3d 179 (2d Cir. 2002).

Similarly, the Eleventh Circuit has held that, "Where counsel has not merely failed to inform, but has effectively misled, his client about the immigration consequences of a conviction, counsel's performance is objectively unreasonable under contemporary standards for attorney competence." *United States v. Kwan*, 407 F.3d 1005, 1016 (9th Cir. 2005). Further, "that counsel may have misled Kwan out of ignorance is no excuse. It is a basic rule of professional conduct that a lawyer must maintain competence by keeping abreast of changes in the law and its practice." *Id.* This reasoning to be sound and persuasive. As such, Platek's affirmative misrepresentation of the deportation consequences of pleading guilty is objectionably reasonable error.

The second factor in the *Strickland* test requires actual prejudice as a result of the fundamental error. Actual prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, the defendant would not have pleaded guilty and would have insisted on a trial, or renegotiated the plea. *Galbraith v. United States*, 313 F.3d 1001 (7th Cir. 2002); *Hill v. Lockhart*, 474 U.S. 52, 59 (U.S. 1985); *United States v. Kwan*, 407 F.3d 1005 (9th Cir. 2005). Pascual was concerned about his immigration status at the time of his plea, and

specifically asked Platek about whether a guilty plea would have immigration consequences. Platek answered in the negative. Pascual claims he would not have pleaded guilty had he known about the deportation consequences. Pascual had lived in the United States for nearly 25 years at the time he pleaded guilty, was employed, and had strong family ties in the United States. Because of Pascual's concern with immigration consequences at the time of his pleading, his inquiry of deportation consequences to Platek, and his long history and strong family ties in the United States, there is certainly a reasonable probability that Pascual would not have pleaded guilty if properly advised of the deportation consequences, satisfying the actual prejudice requirement. This satisfies the *Strickland* test for ineffective assistance of counsel. Federal courts have found that ineffective assistance of counsel constitutes fundamental error. Thus, there is actual prejudice as a result of the fundamental error. This satisfies the first prong of the coram nobis test.

As to actual prejudice, the Second Circuit specifically distinguishes *Cuoto* from *United States v. Maher*, where the defendants, after two weeks of trial, entered an agreement to change their plea to guilty. 108 F.3d 1513 (2d Cir. 1997). In *Maher,* where the defendants had gone through trial and the government had presented most of its evidence, the Second Circuit held that a court must draw all permissible inferences in favor of the government when reviewing a belated claim of innocence. *Id*. However, in *Cuoto*, as in the present case, the petitioner did not go through trial, and did not hear the government's evidence. Because the court does not know what kind of evidence the government would have presented, and whether it would have helped or harmed the government's case once heard and crossed, the Second Circuit found that it is appropriate to find actual prejudice in such a circumstance. *United States v. Couto*, 311 F.3d 179

(2d Cir. 2002). In the present case, Pascual's pleaded before trial. During the plea colloquy, the Government proffered several statements regarding Pascual's tax fraud charge. Pascual agreed with the Government that the incriminating facts were true during the plea proceeding. However, because there was no formal trial and Pascual did not have an opportunity to fully hear the Government's case and cross the Government's witnesses, this case is more closely analogized to *Cuoto* than to *Maher*. As such, withdrawing a guilty plea taken before trial may reasonably give rise to actual prejudice.

The second prong of the coram nobis test requires that there be present adverse legal consequences flowing from the conviction sufficient to satisfy the "case or controversy" requirement of Article III. In a coram nobis case, the possibility of deportation is an adverse consequence that satisfies Article III's case or controversy requirement. *United States v. Kwan*, 407 F.3d 1005, 1014 (9th Cir. 2005); *United States v. Esogbue*, 357 F.3d 532 (5th Cir. 2004).

The third prong of the coram nobis test requires that there exist "sound reasons" for the petitioner's "failure to seek appropriate earlier relief." Under the circumstances of this case, the timing of Pascual's petition is reasonable. Neither does the Government response raise a laches argument for the ineffective assistance of counsel claim. Although Pascual pleaded guilty to tax fraud in 1995, he did not have notice that the immigration advice provided by his lawyer at the time was incorrect until he was detained by the INS in September 2004. The INS initiated formal proceedings against Pascual in March 2005, and Pascual then filed his petition for writ of coram nobis on December 5, 2005. Because formal deportation proceedings were not initiated until March 2005, and Pascual did not have notice of the error in his counsel's immigration

advice until September 2004, it is reasonable that Pascual filed his petition for coram nobis relief in December 2005, more than ten years after his guilty plea.

Finally, the fourth prong of the coram nobis test requires that other statutory remedies are not available. Because Pascual is no longer in custody, the more traditional writ of habeas corpus is unavailable. Coram nobis is the only appropriate remedy available to Pascual. Thus, Pascual has satisfied the elements of a writ of coram nobis for ineffective assistance of counsel in regard to affirmative misrepresentations of deportation consequences to a guilty plea.

### B. Mental Incompetence

Pascual further argues that he suffered from ineffective assistance of counsel when Platek failed to raise a mental incompetency defense. This court agrees with the Government that Pascual has not presented sufficient evidence to show ineffective assistance of counsel on this ground. Under the *Strickland* test, an ineffective counsel challenge to a guilty plea requires that petitioner demonstrate the counsel's performance fell below an objective standard of reasonableness, and there is "reasonable probability" that, but for counsel's errors, the accused would not have pleaded guilty." *Id*. For mental incompetence, the issue is not merely mental illness, but whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir. 1996).

Pascual presents two factual bases for his mental incompetence claim: (1) the psychological evaluation of Marc Sadoff, a licensed social worker, and (2) the comments made

by Platek at his sentencing hearing. Both fall short of showing prejudice and a reasonable probability of legal incompetence.

The psychological evaluation diagnosed Pascual with a Dissociative Identity Disorder, where he may experience a "disruption in the usually integrated functions of consciousness, memory, identity, or perception of the environment." Specifically, Pascual was diagnosed with hearing voices, seeing visual hallucinations, and having a sense that he was a different person during high school. Although Sadoff suspects that Pascual may have as many as three Axis I mental disorders, he does not have enough information for a conclusive report. Based on Sadoff's dissociation disorder diagnosis, it is inconclusive that there is a "reasonable probability" that Pascual would have been found incompetent to plead. The fact that he heard voices and saw hallucinations does not provide a sufficient basis for showing that he did not possess a reasonable degree of rational understanding of the proceedings against him. To the contrary, he had asked about deportation consequences to both his lawyer and his friend, indicating that he did possess a rational understanding of the charges against him and the potential consequences of pleading guilty. Pascual certainly had sufficient present ability to consult with his lawyer. Further, the pleading was made more than 10 years ago, such that a finding of his current mental state, without more, is speculative of his mental state at the time of his pleading. In any case, the fact that Pascual currently has a dissociative disorder, consisting of visual and aural hallucinations, is not sufficient to establish a reasonable probability that he was legally incompetent to rationally understand the proceedings at the time of his guilty plea.

Pascual also asserts that comments by Platek at his sentencing hearing suggest there is reasonable probability that he was mentally incompetent at the time. Platek's comments express

concern about Pascual's ability to respond with the truth. This does not suggest he was unable to understand the charges and proceedings against him. Further, Platek is not certified in any way to diagnose Pascual's mental condition. While Pascual may have been mentally ill, the facts are not sufficient to show a reasonable probability that, but for counsel's errors, Pascual would have been found legally incompetent and would not have pleaded guilty.

For the foregoing reasons, we conclude that Pascual has established his claim of ineffective assistance of counsel under *Strickland* on the affirmative misrepresentation ground, but not the mental incompetency ground. Because Pascual satisfied all four requirements for coram nobis relief on the affirmative misrepresentation ground, we grant the writ.

**Conclusion**

For the foregoing reasons, this court grants Pascual's petition for a writ of coram nobis, vacates Pascual's plea and conviction, and orders a new trial.

Enter:

/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **January 5, 2007**